(98 South. 9)

DOBY v. LAYTON.   (7 Div. 413.)

(Supreme Court of Alabama.   Nov. 8, 1923.)

1. Master and servant ⬅286(17)—Negligence in furnishing material and constructing scaffold held for jury.

In a servant's action for injury by a fall of a scaffold, whether there was negligence, either in the matter of furnishing suitable materials for the scaffold or in constructing it, *held* under the evidence for the jury.

2. Master and servant ⬅89(1) — Injury in work outside service not actionable.

An employee receiving injury while engaged in work wholly apart from his employment cannot recover therefor.

3. Master and servant ⬅284(3) — Issue of scope of employment held for jury.

In a servant's action for injury by fall of a scaffold *held* under the evidence that the issue of the scope of plaintiff's employment, was for the jury.

4. Master and servant ⬅287(8)—Fellow servant relation held for jury.

In a servant's action for injury by fall of a scaffold, whether the workman plaintiff was helping was a colaborer or a foreman *held* a question for the jury.

5. Evidence ⬅471(31) — Question whether witness was foreman in fact proper.

A witness may testify in a direct way touching his position or relation to a business, such as manager, superintendent, etc., and hence in an employee's action for injuries while working at the direction of the foreman it was not error to ask witness, "Were you foreman in fact?"

6. Evidence ⬅472(5)—Opinion as to whether witness supplied reasonably sound lumber for scaffold inadmissible.

Where it was the master's duty to exercise reasonable care in providing suitable material for a scaffold, a witness could not state his opinion as to whether he supplied reasonably sound and good lumber therefor, it being opinion evidence as to performance of a legal duty.

7. Trial ⬅253(9)—Instruction held improper as ignoring evidence and invading jury's province.

In action for injuries by fall of a scaffold, an instruction that if the employer had prior to the alleged injury instructed plaintiff not

to go on any scaffold, but that his duties were as a helper on the ground, then to find for defendant, was properly refused as elliptical and ignoring evidence tending to show modification of instructions given, and as invasive of the jury's province.

Appeal from Circuit Court, St. Clair County; Woodson J. Martin, Judge.

Action for damages by J. R. Layton against R. E. L. Doby. From a judgment for plaintiff, defendant appeals. Affirmed.

Charge 9, requested by defendant is as follows:

"9. The court further charges the jury that if the jury believe from the evidence that the defendant Doby had prior to the alleged injury to plaintiff by the fall of said scaffold, specifically instructed him not to go upon any scaffold but that his duties were as a helper on the ground, then the jury must find for the defendant."

M. M. Smith, F. B. Embrey, and Starnes & Starnes, all of Pell City, for appellant.

Plaintiff having failed to sustain the averment of superintendence in count 2, defendant was entitled to the affirmative charge as to said count. G. P. Ry. v. Propst, 85 Ala. 203, 4 South. 711; So. Ry. v. Guyton, 122 Ala. 231, 25 South. 34; L. & N. v. Pettis, 206 Ala. 96, 89 South. 201; So. Ry. v. Bentley, 1 Ala. App. 359, 56 South. 249. The question to Savage, "Were you foreman in fact?" called for a conclusion of the witness, and was improperly allowed. A. G. S. v. Flinn, 199 Ala. 177, 74 South. 246; Dantzler v. De Bardelehen, 101 Ala. 309, 14 South. 10, 22 L. R. A. 361. At the time of the injury, plaintiff was not engaged in the line and scope of his employment, and hence not entitled to recover. So. Ry. v. Guyton, supra; L. & N. v. Pettis, supra; G. P. Ry. v. Propst, supra.

Joel B. Brown, of Cullman, for appellee.

The evidence made it a question for the jury whether Savage was intrusted with superintendence, and the general charge as to count 2 was well refused. S. S. S. & I. Co. v. Green, 159 Ala. 178, 49 South. 301; Western Car Co. v. Cunningham, 158 Ala. 369, 48 South. 109; Repub. I. & S. Co. v. Harris, 202 Ala. 344, 80 South. 426; Choctaw, C. & M. Co. v. Dodd, 201 Ala. 622, 79 South. 54; S. S. S. & I. Co. v. Austell, 161 Ala. 418, 49 South. 685. A charge asserting contributory negligence, there being no plea raising the issue, is well refused. Shelby Iron Co. v. Cole, 208 Ala. 657, 95 South. 47; Doullut v. Hoffman, 204 Ala. 33, 86 South. 73.

BOULDIN, J. The suit is by an employee or servant against his employer or master to recover damages for personal injury. The case went to the jury on counts 2, 3, and 4 of the complaint and plea of the general issue. All counts ascribe the injury to the falling of a scaffold on which plaintiff was standing while in the performance of his duties in the erection of a building.

Count 2 charges the injury to the negligence of one Savage, intrusted with superintendence "over said work and over plaintiff," and avers that "said Savage, while in the exercise of such superintendence, * * * *negligently caused* or *allowed* said scaffold to fall." (Italics supplied.)

Count 3 is in same form, except the superintendence and negligence are charged to R. E. L. Doby, the defendant.

The original complaint was against R. E. L. Doby and Mary L. Doby. By amendment Mary L. Doby was stricken out, leaving the count in the form indicated. It results that the count charges the injury to the negligence of the employer while exercising a personal superintendence over the work and workmen; alleges that in such dual relation defendant "negligently caused or allowed the scaffold to fall." This averment of negligence is very general, and will be taken, as it was throughout the trial, to include any negligence of an employer, taking charge of his own building operations, resulting proximately in the fall of the scaffold.

This form of averment requires proof, first, of the relation of employer and employee; and, second, the exercise of personal superintendence by the employer. If both are proven, then the duty of defendant was measured by this dual relation. As employer, it would be his general duty, in relation to this scaffold, to exercise reasonable care in providing suitable material therefor, and in the selection of capable servants to construct it. As superintendent, it would be his duty to use like care in having the scaffold constructed.

The fourth count charges: "Said defendant negligently furnished improper material for the construction of said scaffold."

[1] The evidence tended to show that the scaffold was made for temporary use in putting up overhead ceiling. It was made for two men to stand on and do their work, and was constructed by James Savage, assisted by plaintiff. It appears that 1x4 pine planks were used as girders extending across the storeroom 15 feet wide. These girders were placed some 10 feet apart. Each girder was supported in the middle and at each end where it was tied to the wall with nails. Across these girders were placed 1x12 planks, doubled, running lengthwise the building, on which the workmen stood and moved in putting up the overhead ceiling.

At the time of the accident, Jim Savage, the head carpenter or foreman, was squaring or cutting the joints of the planks, and handing them to Moscow Savage and plaintiff, Layton, who were on the scaffold, plac-

ing and nailing the ceiling. While at this work, one of the girders pulled loose at the end and dropped, causing the scaffold to fall and the plaintiff to receive the injury of which he complains.

Under the evidence the jury were authorized to find that the scaffold was being used by two men for the purpose intended; that no strain was put upon the scaffold beyond that for which it was constructed; that there were no hidden defects in materials. Still it fell, probably by reason of springing under the weight of the men standing and moving thereon in the performance of their work.

"Structures are considered to be defective if, either by reason of the bad quality of the materials, or the unskillful manner in which they are put together or secured in their position, they are unable to support the pressures and other strains to which they are subjected, while they are being erected, or after they have been put into use as a part of the master's plant." 3 Labatt's Master and Servant (2d Ed.) § 996, and note 1.

Such scaffolds are constructed for the sole purpose of placing the men and material in such position as to safely and effectively do the work in hand. Given the use for which they are intended, the persons responsible for their construction may easily make them safe. If they are not safe, as shown by their giving away under the use intended, it becomes a question of fact for the jury whether there was a want of ordinary care either in the matter of furnishing suitable materials or in the manner of construction. Sloss-Sheffield Steel & Iron Co. v. Green, 159 Ala. 178, 49 South. 301; Choctaw Coal & Mining Co. v. Dodd, 201 Ala. 622, 79 South. 54; Republic Iron & Steel Co. v. Harris, 202 Ala. 344, 80 South. 426; Western Steel Car & Foundry Co. v. Cunningham, 158 Ala. 369, 48 South. 109; Doullut & Williams v. Hoffman, 204 Ala. 33, 86 South. 73.

In this case defendant offered evidence tending to show the material used was sufficient to make a safe scaffold, if properly designed and constructed. At the same time defendant further offered testimony tending to show the scaffold was planned and constructed in a proper way. In such case the evidence, tending to show want of negligence on the one hand, tends to support the inference of negligence on the other. There was other evidence of want of proper construction. It was open to inference on the whole evidence that the material was too light for the construction of a proper scaffold in the usual way, or that by proper use of such material a safe scaffold could have been erected. The entire issue in this regard was properly submitted to the jury.

[2, 3] Several rulings raise the question whether plaintiff was at the time of his injury engaged in work within the line and scope of his employment. The evidence for

defendant was in effect that when plaintiff was employed it was agreed he should not do carpenter work, but be a helper to wait on the carpenters, and his wages were fixed on that basis, and that during the work defendant told plaintiff not to go on any scaffold, but stay on the ground and wait on the carpenters.

Plaintiff admitted on cross-examination that the original contract was for him to wait on the carpenters at $2 per day, but his testimony was also to the general effect that he was to help Jimmie Savage, the foreman or head carpenter on the job; that no orders were given to stay off the scaffold; that during the progress of the work plaintiff assisted in nailing on weatherboarding and in roofing; that defendant saw him on the scaffolds outside the building; that he was to do what "Jimmie" told him to do. He further testified that at the time the accident happened the men had all quit work except him and Jim Savage; that defendant told him to help Savage; and at Savage's instance defendant got Moscow Savage to help also, and the three men were working on the ceiling at the time.

Jim Savage testified that when he was employed defendant "said that he wanted me to take charge of the work, and that he would get some fellows to help me. I took charge of the work," etc. "I never heard him give any instructions to any of the men. He would tell me what to do and I would go do it, and if I needed help I would call on the other fellows to help." "I don't know that anything was said by Mr. Doby about my becoming foreman" nor "that he wanted to give me supervision over the hands, more than to help me, and for me to work them."

He further testified that plaintiff had worked around on other scaffolds; that he never heard any instructions for him to keep off scaffolds; and that on the occasion of the injury witness directed him to get on the scaffold and help put up the ceiling.

An employee receiving an injury while engaged in work wholly apart from the service for which he is employed cannot recover therefor. This is a just and wholesome rule of law. The basis of the rule, in last analysis, is that as to such work the injured is a volunteer, the relation of employer and employee is wanting, and no duty exists to provide a safe place to do work he is not engaged to do. Georgia Pacific Railroad Co. v. Propst, 85 Ala. 203, 4 South. 711; Southern Railway v. Guyton, 122 Ala. 231, 25 South. 34; L. & N. R. Co. v. Pettis, 206 Ala. 96, 89 South. 201.

Does the undisputed evidence in this case show that plaintiff came within this rule as matter of law at the time of his injury? Without a further review of the evidence, we think several inferences were open to the jury as they may find the facts to be. It

may be inferred that plaintiff was a mere "helper," in the technical trade sense, to wait on the other men or on Savage, or that he was a helper in the sense of being under and subject to the direction of a foreman.

Again, if employed and instructed to do a special work, it may appear from the evidence that under the direction of the foreman plaintiff's sphere of labor was extended, as the work progressed, with the knowledge and acquiescence of defendant. Under still another view, it may be inferred that after the more hazardous outside work was done, and owing to a shortage of hands, the defendant directed plaintiff to "help Jimmie" in a broader sense than at first. Taking the evidence as a whole, we conclude the issue on the scope of plaintiff's employment at the time of the injury was clearly one of fact for the jury.

[4] We reach the same conclusion on the question of the superintendence intrusted to Jimmie Savage. One phase of the evidence would indicate that he was a mere colaborer and all were under the superintendence of defendant, and another that he was foreman in charge of the men and work in the absence of defendant. We have already intimated that whether the defect in the platform arose from want of proper material was also a jury question. 4 Labatt's Master and Servant, § 1497b, note e. It follows that the general affirmative charge requested by defendant as to each count, and the like charge requested on the whole case, were properly refused.

[5] A witness may testify in a direct way touching his position or relation to a business, such as manager, superintendent, foreman, employer, employee, and the like. Hence, there was no error in allowing the question to witness Jim Savage, viz.: "Were you foreman in fact?" Choctaw Coal & Mining Co. v. Dodd, 201 Ala. 622, 624, 79 South. 54.

[6] On the other hand, a witness cannot state his opinion as to whether he supplied "reasonably sound and good lumber for the construction of that building and anything necessary about it." This is opinion evidence on the question of his performance of the legal duty at issue. A. G. S. R. Co. v. Flinn, 199 Ala. 177, 74 South. 246.

[7] There was no error in refusing defendant's charge No. 9. It is elliptical and involved. It ignored the evidence above pointed out tending to show a waiver or modification of the instructions given. It also invaded the province of the jury. One issue before them was whether such instructions were a part of the contract agreed to by both parties defining the scope of plaintiff's employment, or were warnings in the nature of rules prescribed by an employer for the safety of the employee. If the latter, they must be set up under pleas of contributory negligence. Doullut & Williams v. Hoffman, 204 Ala. 33, 86 South. 73; Shelby Iron Co. v. Cole, 208 Ala. 657, 95 South. 47.

No rulings on such pleas are here presented. As stated, the charge was properly refused as misleading in that it ignores one or more phases of the evidence.

We find no error in the record, and the judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.